NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DAVID H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.H., *Appellees*.

No. 1 CA-JV 15-0124
FILED 10-27-2015

Appeal from the Superior Court in Maricopa County
No. JD22220
The Honorable Kristin C. Hoffman, Judge

**AFFIRMED**

COUNSEL

Denise Lynn Carroll Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

---

**J O N E S**, Judge:

¶1        David H. (Father) appeals the juvenile court's order terminating his parental rights to T.H. (Child).  Father argues Department of Child Safety (DCS) did not prove the statutory grounds for severance or that severance was in Child's best interests.  For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        In July 2012, police officers knocked on a motel door to carry out an arrest warrant for Father, and Tracie B. (Mother) answered the door with methamphetamine and a knife in her hand.  Both parents were arrested, and Child was found inside the room suffering from a urinary tract infection, impetigo, diaper rash, constipation, and dehydration.  Child was ultimately placed with foster parents recommended by her relatives.

¶3        In January 2013, the juvenile court found Child dependent as to Father and approved a case plan of family reunification.  In an effort to reunify the family, DCS required Father to "refrain from using illicit substances" and "maintain a safe and sober lifestyle," maintain stable living conditions, complete random urinalysis tests, complete substance abuse treatment, address issues of mental illness, and adhere to prescribed medical treatment and recommendations.  Services provided by DCS included parent aid services, visitation, psychological evaluation, psychiatric evaluation, counseling, drug court, and transportation.

¶4        In June 2013, a psychologist diagnosed Father with various mood disorders, "adult antisocial behavior," and marijuana, cocaine, and opioid dependencies in remission.  Given Father's mental instability, the

---

[1]     We view the facts in the light most favorable to upholding the termination order.  *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 449, ¶ 12 (App. 2007) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002)).

psychologist believed returning Child to Father at that juncture would have placed her at risk of abuse or neglect but recommended Father continue with supervised visitation, substance abuse treatment, parenting classes, and counseling. Father participated in parent aid services and counseling, and, was scheduled to successfully finish drug court the day after the severance hearing concluded in April 2015. Father had also maintained stable housing for at least nine months and was receiving disability income. However, at the time of the severance hearing, Father had missed nine of sixty drug tests and tested positive for heroin once in August 2014.

¶5        In October 2014, a psychiatrist diagnosed Father with methamphetamine, alcohol, and marijuana dependencies in remission. The psychiatrist also diagnosed Father with an active opioid dependence. The psychiatrist's review of Father's pharmacy records revealed that, during the two months prior to the evaluation, Father had filled prescriptions from six different prescribers, a behavior the psychiatrist reported as "highly suspicious for opioid misuse." Although Father suffers from pain related to a back injury, the psychiatrist reported he exhibited "a pattern of opioid use that is consistent with doctor shopping."[2] The psychiatrist also noted Father had eight opioid-negative drug tests indicating "he is either taking more pills than prescribed during part of the month, . . . or not taking all of his prescribed medications (and possibly diverting the balance)."

¶6        In his report, the psychiatrist concluded Father's opioid dependence "would interfere with his ability to be a safe and stable parent" and described Father's prognosis for being able to demonstrate "minimally adequate parenting skills in the foreseeable future" was "poor, due to the length of time in care, and his inability to control his substance use despite the services he has received." The psychiatrist further stated he could identify "no specific psychiatric services that are likely to promote a substantial change for [Father]." He confirmed this conclusion at the severance hearing, testifying that "in all probability Father . . . will be unable to become a minimally adequate parent."

¶7        The DCS case manager testified Child had been in the foster parents' custody since August 2012. The foster parents were providing for Child's educational, emotional, and social needs, and Child has been

---

[2]        The psychiatrist described "doctor shopping" as conduct directed at finding multiple doctors to prescribe narcotics for the same injury or condition where only the prescription of a single doctor would be deemed medically appropriate.

receiving needed therapy to develop her social skills and speech. The foster parents have also indicated their willingness to adopt Child.

**¶8**        On April 7, 2015, the juvenile court determined DCS had proven statutory grounds for severance under Arizona Revised Statutes (A.R.S.) section 8-533(B)(3)[3] (chronic substance abuse) and (8)(c) (length of time in care), and entered an order terminating Father's parental rights to Child.[4] Father timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶9**        To terminate parental rights, a juvenile court must find (1) a statutory ground for severance under A.R.S. § 8-533(B) by clear and convincing evidence, and (2) severance is in the child's best interests by a preponderance of the evidence. *See Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Father argues DCS did not prove either element. We review a termination order for an abuse of discretion and will affirm "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citations omitted).

## I.        Reasonable Evidence Supports the Juvenile Court's Order Terminating Father's Parental Rights Under A.R.S. § 8-533(B)(3).

**¶10**        Parental rights may be terminated if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3).[5] Father argues the

---

[3]        Absent material changes from the relevant date, we cite a statute's current version.

[4]        The juvenile court also terminated Mother's parental rights; however, she does not challenge the order and is not a party to this appeal.

[5]        Severance on this ground also requires a finding that DCS made reasonable efforts to reunify the family or that such efforts would have been futile. *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31-34 (App. 1999)). Father does not contend DCS failed to make

statutory ground for severance was not met because he "actively participated" in most of the services required by DCS and "made significant strides in addressing his substance abuse issues."

**¶11** Although completion of drug court is significant, it does not negate Father's long history of chronic abuse of drugs, controlled substances, and alcohol, nor his continued abuse of opioids. And, despite his participation in "most" of the recommended services, Father continued to exhibit concerning behaviors more than two years after Child was removed from his care; he participated in "doctor shopping," tested positive for heroin, and exhibited behaviors indicative of misuse or abuse of prescribed opioids. Father's actions and the psychiatrist's testimony that "in all probability Father . . . will be unable to become a minimally adequate parent," serve as reasonable evidence to support the juvenile court's finding that Father's opioid dependence would likely continue for a prolonged indeterminate period and prevent him from parenting Child appropriately.

**¶12** Father also asserts the psychiatrist wrongly interpreted his pharmacy records in reporting he was doctor shopping for opioids and the juvenile court ignored his testimony regarding his opioid prescriptions. However, "the resolution of . . . conflicts in the evidence is uniquely the province of the juvenile court as the trier of fact; we do not re-weigh the evidence on review." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. at 282, ¶ 12 (citations omitted). Moreover, Father does not dispute that his urinalysis test results indicate continued opioid abuse.

**¶13** Because reasonable evidence supports the juvenile court's findings that severance was proper by clear and convincing evidence under A.R.S. § 8-533(B)(3), we find no error.[6]

---

reasonable efforts to reunify the family, and the record supports the juvenile court's finding that DCS made such efforts by providing urinalysis tests, substance abuse treatment, psychological evaluation, psychiatric evaluation, counseling, visitation, transportation, and drug court.

[6] Because we find sufficient evidence supports termination of parental rights under A.R.S. § 8-533(B)(3), "we need not consider the [other] ground." *See Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶ 14 (App. 2004) (citing *Maricopa Cnty. Juv. Action No. JS-501568*, 177 Ariz. 571, 575 (App. 1994)).

## II.   Reasonable Evidence Supports the Juvenile Court's Finding that Severance was in Child's Best Interests.

¶14        A juvenile court's finding of grounds for severance must be accompanied by a finding that the severance is in the best interests of the child.  *See* A.R.S. § 8-533(B) ("[I]n considering any of the following grounds [for severance], the court shall also consider the best interests of the child."); *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990).  Father argues DCS "failed to show how reunification with the child would incur a detriment to the child."  However, DCS need not prove reunification would incur a detriment if it can prove the child will benefit from the severance.  *See JS-500274*, 167 Ariz. at 5 ("[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship.") (citations omitted).

¶15        Factors a court may consider in determining whether severance is in the child's best interests include the availability of an adoptive placement and whether an existing placement is meeting the needs of the child.  *See Jesus M.*, 203 Ariz. at 282, ¶ 14 (quoting *Audra T.*, 194 Ariz. at 377, ¶ 5).  Here, not only are Child's foster parents willing to adopt, but they are also providing her with needed education, therapy, and support to overcome the developmental challenges she incurred while in Father's care.  This evidence supports a finding that severance would benefit Child, and the juvenile court did not err in finding severance is in Child's best interests.

### CONCLUSION

¶16        For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to Child.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama